IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

EXZABRAIN TASHAWN FLEMING, SR.                                    PETITIONER
REG. #21966-009

V.                                        NO.  2:05CV00282 SWW/JWC

LINDA SANDERS, Warden,                                            RESPONDENT
FCI, Forrest City, AR

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District

Court Judge Susan Webber Wright.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and two copies of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from the date of the findings and recommendations.  The copy will

be furnished to the opposing party.   Failure to file timely objections may result in waiver

of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different,

or additional evidence, and to have a hearing for this purpose before the District Judge,

you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge  (if such
        a  hearing is granted)  was not  offered at  the hearing before the Magistrate
        Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Exzabrain Tashawn Fleming, Sr., an inmate in the Federal Correctional Institution in Forrest City, Arkansas, brings this 28 U.S.C. § 2241 petition for writ of habeas corpus challenging the policy of the Bureau of Prisons (BOP) regarding when a federal prisoner is eligible for transfer to a community corrections center (CCC), along with a supporting brief (docket entries #1, #2).  Respondent has filed a response (docket entry #5).  For the reasons that follow, the petition should be GRANTED.

I.
Background

Petitioner is serving a eighteen-month sentence of imprisonment imposed on December 10, 2004, by the United States District Court, Eastern District of Arkansas, upon revocation of a period of supervised release.  United States v. Muldrew, et al., No. 4:99-cr-

00207-SWW, docket entry #158 (E.D. Ark. Dec. 10, 2004).[1]  He says he has been

informed by the BOP that he is not eligible to spend the last six months of his sentence in

a CCC,[2] based on its February 2005 policy which limits CCC placement to the last ten

percent of an inmate's sentence.  Petitioner argues that the BOP's interpretation of the

applicable statutes is erroneous and illegal and that application of its current policy to him

violates the Ex Post Facto Clause of the United States Constitution.  He asks the Court to

order the BOP to consider transferring him to a CCC for the remainder of his sentence, as

his six-month date passed on October 7, 2005.[3]

## II.
### Analysis

A.    Statutory Framework.

This case turns on the interpretation of two statutes.  Pursuant to 18 U.S.C. §

3621(b), the BOP is authorized to "designate the place of [a federal] prisoner's

imprisonment," which may be "any available penal or correctional facility that meets

minimum standards of health and habitability established by the [BOP]...[and] that the

[BOP] determines to be appropriate and suitable."  The statute further provides that the

BOP "may at any time ... direct the transfer of a prisoner from one penal or correctional

---

[1]Convicted of distributing cocaine base, Petitioner was initially sentenced in August 2000 to 50 months of imprisonment, followed by three years of supervised release.  See No. 4:99-cr-00207-SWW, docket entry #103.

[2]CCCs are BOP contract facilities, commonly referred to as halfway houses, and they "provide suitable residence, structured programs, job placement, and counseling, while the inmates' activities are closely monitored."   BOP Program Statement 7310.04 ¶ 7(a) (Dec. 16, 1998) (accessible at www.bop.gov/policy/progstat/ 7310_004.pdf).

[3]This petition was filed with the Court on November 9, 2005.

facility to another." The statute lists the following factors for the BOP to consider in making an initial housing designation or transfer determination: (1) the resources of the facility, (2) the nature and circumstances of the prisoner's offense, (3) the prisoner's history and characteristics, (4) any relevant statements or recommendations by the sentencing court, and (5) any pertinent policy statements issued by the Sentencing Commission. There is no contention here that a CCC does not constitute a "place of ... imprisonment" or a "penal or correctional facility." See Elwood v. Jeter, 386 F.3d 842, 846 & n.2 (8th Cir. 2004) (stating that government had conceded that a CCC is a place of imprisonment and a penal or correctional facility).

The second statute, 18 U.S.C. § 3624(c), states in relevant part:

> **Pre-release custody.** – The [BOP] shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

B.    BOP's December 2002 Policy.

For a number of years, the BOP construed its authority under § 3621(b) and § 3624(c) as authorizing the regular transfer of inmates from prison to community confinement for the last six months of their sentences, even if the six-month period exceeded ten percent of their sentences. See BOP Program Statement 7310.04 ¶ 5.[4]

---

[4]This program statement stated:

A CCC meets the definition of a "penal or correctional facility." Therefore, the Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the "last ten percentum of the term," or more than six months, if appropriate.

On December 13, 2002, the Office of Legal Counsel for the United States Department of Justice (OLC) issued a memorandum opinion finding that this practice was unlawful.  OLC Memo. Op. for Dep. Atty. Gen., <u>Bureau of Prisons Practice of Placing in Community Confinement Certain Offenders Who Have Received Sentences of Imprisonment</u>, 2002 WL 31940146 (Dec. 13, 2002).  The opinion stated that, when a prisoner has received a sentence of imprisonment, the BOP's authority to transfer him to a non-prison site is limited to a period "not to exceed six months, of the last 10 percentum of the term to be served," pursuant to § 3624(c)'s language.  The United States Attorney General adopted the OLC's position[5] and, in response, the BOP altered its policies regarding pre-release community confinement designation, limiting the duration to the lesser of six months or ten percent of a prisoner's sentence.  <u>See</u> BOP Memo. for Chief Executive Officers (Dec. 20, 2002)[6] (hereinafter referred to as the "December 2002 Policy").

The BOP's December 2002 Policy generated a multitude of prisoner petitions and, consequently, a number of conflicting District Court decisions on its validity.  The issue was settled in the Eighth Circuit by the ruling in <u>Elwood v. Jeter</u>, 386 F.3d 842 (8th Cir. 2004), which reversed a decision arising out of this District and concluded that the December 2002 Policy was based on an erroneous interpretation of § 3621(b) and § 3624(c).  In <u>Elwood</u>, the Eighth Circuit Court of Appeals held that the correct interpretation of the statutes was as follows.  First, § 3621(b) gives the BOP discretion to transfer prisoners to

---

[5]This was embodied in a memorandum dated December 16, 2002, from Larry D. Thompson, Deputy Attorney General, to Kathleen Hawk Sawyer, who was then BOP Director.  The memorandum can be accessed at <u>www.usdoj.gov/dag/readingroom/imprisonment.htm.</u>

[6]This can be accessed at <u>www.bop.gov/policy/ogcpg/ogcguidance_memo_red.pdf</u>.

CCCs at any time during their incarceration.  Second, § 3624(c) bestows an affirmative duty on the BOP to ensure that each prisoner spends a reasonable part of the last ten percent of his sentence under pre-release conditions that will facilitate a smooth re-entry into the community. Third, the BOP's duty under § 3624(c) is qualified in that placement under pre-release conditions is mandated only "to the extent practicable," and the duty "shall not extend beyond the last six months of the prisoner's sentence." Elwood, 386 F.3d at 846-47.

The Eighth Circuit further stated:

We emphasize ... that 18 U.S.C. § 3624(c) does not require placement in a CCC.  It only obligates the BOP to facilitate the prisoner's transition from the prison system.  Under § 3621(b), the BOP may place a prisoner in a CCC for six months, or more.  Under § 3624(c) the BOP must formulate a plan of pre-release conditions.  This plan may include CCC placement, home confinement, drug or alcohol treatment, or any other plan that meets the obligation of a plan that addresses the prisoner's re-entry into the community.  Likewise, the obligation is qualified by the phrase "to the extent practicable."  Security concerns or space limitations in a CCC near the prisoner's home are among the factors that may make it impractical to transfer a prisoner to a CCC for all or even part of the transition period.

Id. at 847.

Upon remand, the District Court entered an order directing that:

Pursuant to the Eighth Circuit's opinion ..., Respondent shall: (a) consider, in good faith, transferring Petitioner to a CCC for the last six months of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 policy; and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable.[fn.3: This duty shall not extend beyond the last six months of Petitioner's sentence.]

Elwood v. Jeter, No. 2:03cv00202, docket entry #39 at 3-4 (E.D. Ark. Jan. 3, 2005). The petitioner appealed from this order, and the Eighth Circuit summarily affirmed the decision

of the District Court.  Elwood v. Jeter, No. 05-1338 (8th Cir. Feb. 9. 2005) (docket entry #42 in E.D. Ark. No. 2:03cv00202).

      C.    BOP's February 2005 Rule.

In response to court decisions invalidating the December 2002 Policy, the BOP proposed a new rule under the Administrative Procedure Act's notice-and-comment procedure.  Community Confinement, Proposed Rule, 69 Fed. Reg. 51213 (Aug. 18, 2004).  Because several courts had held that the BOP had discretion under § 3621(b) to place prisoners in CCCs prior to the last ten percent of the sentence being served, the BOP proposed to "exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months."  Id.  The BOP explained that "[t]his categorical exercise of discretion is permissible based on the Supreme Court's recognition that, even when a statutory scheme requires individualized determinations, the decisionmaker has authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority."  Id. (citing Lopez v. Davis, 531 U.S. 230, 243-44 (2001)).  The proposed rule became effective February 14, 2005.  Community Confinement, Final Rule, 70 Fed. Reg. 1659 (Jan. 10, 2005).  As codified, the rule provides as follows:

§ 570.20.  What is the purpose of this subpart?

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

§ 570.21.  When will the Bureau designate inmates to community confinement?

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

28 C.F.R. §§ 570.20-570.21 (2005) (hereinafter the "February 2005 Rule").

Like the December 2002 Policy that the Eighth Circuit held to be invalid in Elwood, the February 2005 Rule limits placement in a CCC to the last ten percent of the prison sentence being served, not to exceed six months, the only exception being when a specific BOP program allows a greater period of community confinement pursuant to separate statutory authority.   Also, like the December 2002 Policy, the BOP's adoption of the February 2005 Rule has spawned numerous lawsuits.   Several District Courts, including all of the judges in this District to have considered the issue, have held that the rule is invalid, concluding that the legislative history of § 3621(b) *requires* the BOP to consider the factors set forth in the statute before arriving at a determination regarding the appropriate facility for a given inmate, and that the rule fails to consider these factors with respect to individual placement of inmates in a CCC.   See Fults v. Sanders, No. 2:05cv00091-GH, docket entry #6 at 6-8 (E.D. Ark. July 26, 2005) ("While the BOP labeled the rule a 'categorical exercise of discretion' it did not exercise its discretion at all.   It merely repackaged the December 2002 blanket rule that was rejected in Elwood."); accord

Hollowell v. Sanders, No. 2:05cv00204-JMM (E.D. Ark. Nov. 15, 2005); Clayton v. Sanders, No. 2:05cv00181-SWW (E.D. Ark. Sept. 27, 2005); Banks v. Sanders, No. 2:05cv00161-JLH (E.D. Ark. Sept. 23, 2005); Rabbitt v. Sanders, No. 2:05cv00125-WRW (E.D. Ark. Sept. 23, 2005); Smith v. Sanders, No. 2:05cv00243-HDY, 2005 WL 2875064 (E.D. Ark. Oct. 27, 2005); Mitchell v. Sanders, No. 05cv00156-JWC (E.D. Ark. Oct. 11, 2005); Wiles v. Sanders, No. 2:05cv00220-JFF (E.D. Ark. Oct. 4, 2005); Oatsvall v. Sanders, No. 2:05cv00078-JTR (E.D. Ark. Sept. 16, 2005); Jones v. Sanders, No. 2:05cv00047-HLJ (E.D. Ark. June 7, 2005).  See also Baker v. Willingham, No. 3:04cv1923 (PCD), 2005 WL 2276040, *4 (D. Conn. Sept. 19, 2005) (granting writ and finding that "[i]n effect ... the February 2005 Rule is identical to the December 2002 Policy, as the BOP continues to refuse to consider inmates for CCC placement prior to their ten percent date"); United States v. Paige, 369 F. Supp. 2d 1257,  1262-63 (D. Mont. 2005); Pimentel v. Gonzales, 367 F. Supp. 2d 365, 373-76 (E.D.N.Y. 2005); contra Moss v. Apker, 376 F. Supp. 2d 416, 424-25 (S.D.N.Y. 2005) (concluding that February 2005 Rule represents "a reasonable interpretation of § 3621(b)" and "a lawful exercise of the BOP's discretion under § 3621(b)"); Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548, 551-52 (E.D.N.Y. 2005) (finding that BOP is "authorized to create categorical rules even where a statute requires individualized determinations").

The issue is currently under consideration by the Eighth Circuit Court of Appeals in an appeal from this District.  Fults v. Sanders, No. 05-3490 (8th Cir. Dec. 15, 2005) (submitted on the briefs without oral argument).  In a recent ruling, the Third Circuit Court of Appeals invalidated the BOP's February 2005 Rule, stating as follows:

We agree with the reasoning of those courts that have found the regulations unlawful. The regulations do not allow the BOP to consider the nature and circumstances of an inmate's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Woodall v. Federal Bureau of Prisons, No. 05-3657, 2005 WL 3436626, *6 (3d Cir. Dec. 15, 2005). Woodall distinguished the Supreme Court's Lopez decision, which upheld a BOP regulation categorically excluding offenders who had possessed a firearm during their offense from participating in an early release program. Lopez held that, even where a statutory scheme requires individualized determinations, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez, 531 U.S. at 243-44. Woodall noted that, unlike Lopez, sentencing recommendations and other individual factors at play in the CCC placement determination were not "generally applicable" and that, by specifically delineating factors to consider in making placement decisions, Congress "*did* appear to express an intent to withhold from the BOP the authority to make CCC placements without the guidance of the statutory factors." Woodall, supra at *9.

This Magistrate Judge agrees with, and therefore adopts, the rationale and result of Woodall and the District Court decisions invalidating the February 2005 Rule. The text and legislative history of § 3621(b) require that the BOP consider the factors set forth in the statute before determining the appropriate facility for a given inmate, but the February

2005 Rule fails to take these factors into account with respect to placement of inmates in a CCC.

The Court, therefore, should grant Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus and should direct Respondent to (a) consider, within twenty days and in good faith, transferring Petitioner to a CCC for the remainder of his sentence, in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy, which must include the factors set forth in § 3621(b); and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

The Court cannot, however, order the BOP to transfer Petitioner to a CCC at any particular time.  Nothing in the applicable statutes, Woodall, Elwood, or the District Court cases invalidating the February 2005 Rule entitles any prisoner to six months of placement in a CCC.  See Woodall, supra at *13 ("[T]hat the BOP may assign a prisoner to a CCC does not mean that it must.").  Instead, the proper remedy is consideration of such placement by the BOP in accordance with this opinion.  Id.; Elwood, 386 F.3d at 847.

Because the Court has determined that Petitioner is entitled to relief as set forth above, it is not necessary to address his ex post facto argument.


III.
Conclusion

THEREFORE, Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus should be GRANTED and Respondent should be directed to: (a) consider, within twenty

days and in good faith, transferring Petitioner to a CCC for the remainder of his sentence in accordance with the factors taken into account by the BOP prior to its adoption of the December 2002 Policy, which must include the factors set forth in 18 U.S.C. § 3621(b); and (b) place Petitioner in conditions that will afford him a reasonable opportunity to adjust to and prepare for his reentry into the community during a reasonable part of the last ten percent of his term, to the extent practicable, not to exceed six months.

DATED this 5th day of January, 2006.


_____
UNITED STATES MAGISTRATE JUDGE